UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CINDY CARIDAD SANPEDRO,

    Plaintiff,

v.                                                                              Case No. 2:20-cv-968-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

    This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues the Administrative Law Judge (ALJ) erred by discounting her treating physicians' opinions regarding her work-related limitations. Plaintiff also contends that substantial evidence does not support the ALJ's finding that Plaintiff stopped working to care for her adult son, who has a traumatic brain injury, and not because she was disabled. After considering Plaintiff's arguments, Defendant's response, and the administrative record (Docs. 16, 25), I find the ALJ applied the proper standards, and the decision that Plaintiff is not disabled is supported by substantial evidence. I affirm the ALJ's decision.

    *A. Background*

    Plaintiff Cindy Caridad Sanpedro was born on January 8, 1968. (R. 24) She was 49 years old on her alleged disability onset date of January 1, 2017.[1] (R. 15, 24) She is divorced

---

[1] Plaintiff's date last insured (DLI) for DIB purposes was December 31, 2018. (R. 18) For DIB claims, a claimant is eligible for benefits if she demonstrates disability on or before her DLI.

1

with two adult children and lives with her son, who suffered a TBI in 2012. She has a GED and past work experience cleaning houses. (R. 24-25) Plaintiff alleges disability due to non-insulin dependent Type 2 diabetes, altered glucose metabolism, hypercholesteremia, hypertension, and positive antinuclear antibody. She testified, "I have ongoing pain in my whole body . . . I try my best to get up in the morning and I plan my day, how I'm going to do this and I can't get through the day. I have to sit, take breaks because of my pain." (R. 51-52) She can only sleep three hours at night because of her pain. (R. 54) She can do household chores, including laundry and cooking, but has to take frequent breaks. (*Id*.) She does light exercises until the pain is unbearable (R. 59), but she testified that "[t]hree or four days a week, I can't get off my bed or nothing." (R. 39)

After two hearings, the ALJ found Plaintiff suffers from the severe impairments of diabetes mellitus, hypertension, fibromyalgia, undifferentiated connective tissue disease, obesity, nonalcoholic steatohepatitis with thrombocytopenia and mild anemia, and coronary arteriosclerosis.[2] (R. 18) Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled as she has the RFC to perform light work with limitations:

> She can only occasionally balance, stoop, kneel, crouch, and climb ramps and stairs, and can never crawl or climb ladders, ropes, or scaffolds. She is limited to frequent handling, she must avoid concentrated exposure to vibration and pulmonary irritants, and she must avoid all exposure to moving mechanical parts and unprotected heights.

---

42 U.S.C. § 423(a)(1)(A). Plaintiff must show she was disabled on or before December 31, 2018. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

[2] After Plaintiff's first hearing, held on August 21, 2019, the ALJ and Plaintiff propounded medical interrogatories on medical expert and rheumatologist Alexander Todorov, M.D. regarding Plaintiff's mixed connective tissue disease. (R. 1297-1302) Once Plaintiff received Dr. Todorov's responses, she requested a supplemental hearing, as was her right. (R. 370) The supplemental hearing was held on March 3, 2020. (R. 37-42)

(R. 20)

The ALJ found that, with this RFC, Plaintiff could not perform her past relevant work as a residential housekeeper but could work as an electronics worker, a mailroom clerk, and a production assembler. (R. 25) The Appeals Council denied review. Plaintiff, who has exhausted her administrative remedies, filed this action.

B. *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related

3

functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

## C. Discussion

### 1. Drs. Perdomo and Carbone's opinions

Plaintiff argues the ALJ erred in his consideration of the opinions of Plaintiff's primary care physician Arles Perdomo, M.D. and her treating rheumatologist Gustavo Carbone,

4

M.D. (Doc. 25 at 20-27). The Commissioner responds that the ALJ evaluated the medical source opinions in accordance with applicable regulations and properly found Drs. Perdomo and Carbone's opinions unpersuasive (*Id*. at 27-42). I agree.

Before March 27, 2017, Social Security Administration ("SSA") regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c). Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).

In this case, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim on March 1, 2018. (R. 15) As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019).

The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. § 404.1520c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are

5

the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).  Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain

how he or she considered the other three factors.³ 20 C.F.R. § 404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1).

But Plaintiff argues that these new regulations do not eliminate the judicially-created treating physician rule – a longstanding requirement in this Circuit. *See Winschel*, 631 F.3d at 1179; *Beasley v. Comm'r of Soc. Sec.*, No. 2:20-cv-445-JLB-MRM, 2021 WL 4059895, at * 3-4 (M.D. Fla. Sept. 7, 2021). To be sure, district courts have diverged in their approaches. *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *5 (M.D. Fla. Aug. 5, 2021) (collecting cases and applying good cause standard "in the absence of binding or persuasive authority to the contrary" but noting it was non-issue – under both standards, ALJ's opinion was substantially supported)⁴, *with Miller v. Kijakazi*, No. 4:20-cv-656-GMB, 2021 WL 4190632 (N.D. Ala. Sept. 14, 2021) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 845 (1984), and finding treating physician rule

---

³ The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

⁴ In finding the treating physician rule still applies, the *Bevis* court cited *Simon v. Comm'r of Soc. Sec.*, 1 F.4th 908, 912 n.4 (11th Cir. 2021) ("*Simon I*"), a July 9, 2021 decision the Eleventh Circuit withdrew on rehearing on August 12, 2021, and substituted with *Simon*, 7 F.4th 1094 (11th Cir. 2021) ("*Simon II*"), seven days after *Bevis* was decided. In a *Simon I* footnote, the Eleventh Circuit stated that the length of a claimant's treating relationship with her doctor was still an important factor to consider under the new regulations. 1 F.4th at 914 n. 4; *see also Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562(M.D. Fla. July 12, 2021) (citing *Simon I* and emphasizing that under new regulations, length of treating relationship must still be considered). That footnote was *dicta*, however, as *Simon I* and *II* were decided under the old regulations. Interestingly, *Simon II* omits the *Simon I* footnote.

7

inapplicable; plaintiff did not cite Eleventh Circuit case stating the Act mandates it and did not argue the new regulations are arbitrary, capricious, or otherwise invalid), *Carr v. Comm'r of Soc. Sec.*, No. 1:20-cv-217-EPG, 2021 WL 1721692 (E.D. Cal. Apr. 30, 2021) (finding new regulations entitled to *Chevron* deference; treating physician rule yields to new regulations because it conflicts with them), *Wiginton v. Comm'r of Soc. Sec.*, 3:20-cv-5387-LC/MJF, 2021 WL 3684264 (N.D. Fla. Aug. 3, 2021) (applying new regulations without discussing whether Eleventh Circuit precedent regarding the treating physician rule applies), *and Devra B.B. v. Comm'r of Soc. Sec.*, 6:20-cv-643(BKS), 2021 WL 4168529 (N.D.N.Y. Sept. 14, 2021) (rejecting Plaintiff's argument that the new regulations conflict with the treating physician rule and are therefore invalid).

The Eleventh Circuit has not spoken directly on the issue in a published opinion. *See Simon* II, 7 F.4th at 1104, n.4 ("[W]e need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."). But in a recent unpublished opinion, *Walker v. Commissioner of Social Security*, No. 21-12732, 2022 WL 1022730, at * 2 (11th Cir. Apr. 5, 2022), the Eleventh Circuit affirmed the ALJ's consideration of a medical opinion's supportability and consistency and found that the ALJ "was not required under the new regulations to provide more weight to [plaintiff's treating physician's] opinion absent good cause, or state with clarity his reasons for not doing so." And in *Matos v. Commissioner of Social Security*, No. 21-11764, 2022 WL 97144, at * 4 (11th Cir. Jan. 10, 2022), another recent unpublished decision, the Eleventh Circuit found that the ALJ's assessment of a treating source's medical opinion for persuasiveness was legally sufficient "in accordance with the SSA's new regulatory scheme." The *Matos* court stated that the new

8

regulations "no longer require [] the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." *Id.* (emphasis added).

Here, citing *Simon I*, Plaintiff argues that, even though the treating physician rule was codified at 20 C.F.R. § 404.1527 in 1991, and revoked at 20 C.F.R. § 404.1520c in 2018, "the Eleventh Circuit case law concerning deference given to a treating medical source's opinion developed before 1991 and is valid and still in effect at this time." (Doc. 25 at 25). But considering the Eleventh Circuit's decisions *Simon II*, *Walker*, and *Matos*, the Court finds that the ALJ was not required to demonstrate good cause to find Plaintiff's treating source opinions unpersuasive. Instead, the ALJ, in accordance with 20 C.F.R. § 404.1520c(c), was required to consider the persuasiveness of Plaintiff's medical opinions and evaluate them primarily based on supportability and consistency. Here, he did so.

Rheumatologist Dr. Carbone of the University of Miami Hospital and Clinics (UMHC) signed off on an April 9, 2018 treatment note following Plaintiff's initial visit to the UMHC rheumatology clinic following a positive antinuclear antibody (ANA) test.[5] (R. 921-24) She told resident Hasini Ediriweera, M.D. that her pain started in 2016 and had worsened ever since. (R. 921) Plaintiff reported seeing a rheumatologist 18 months earlier who told her she has osteoarthritis and fibromyalgia and ordered the ANA test that prompted her visit to Dr. Carbone. Plaintiff was not prescribed any medication at that time but took Tylenol and Advil daily for pain management. (*Id.*) Dr. Ediriweera ordered a sleep study and "if negative,

---

[5] A positive ANA test is suggestive of autoimmune disease.

9

start fibromyalgia medications," referred her to pain management, and advised her to lose weight.[6] (R. 924)

Then, following a December 2018 follow-up visit, Dr. Carbone wrote: "Most of [Plaintiff's] serology which was done in April was negative she only had a positive ANA titer and + RNP.  Plaintiff has been taking muscle relaxants like cyclobenzaprine and Cymbalta 30 mg twice a day with mild to moderate improvement. . . . Patient was recently started on hydroxchloroquine Plaquenil with improvement of her fatigue mild joint pains today." (R. 1073)  The rheumatologist noted that Plaintiff has "a history of chronic pain syndrome[,] fibromyalgia, thrombocytopenia of unknow etiology.  Possible UCTD (undifferentiated connective tissue disorder) with a positive RNP antibody and ANA antibodies, denies Raynaud phenomenon and arthralgias/myalgia improved while started on hydroxychloroquine without any side effects from it." (R. 1076)

---

[6] "Fibromyalgia is a clinical syndrome defined by chronic widespread muscular pain, fatigue, and tenderness. . . . Unfortunately, there are no 'objective markers' – evidence on X-rays, blood tests or muscle biopsies for this condition, so patients have to be diagnosed based on the symptoms they are experiencing." www.rheumatology.org.  The Eleventh Circuit recognizes the potentially disabling nature of fibromyalgia and the medical science behind its diagnosis and requires an ALJ to support any rejection of a claimant's pain complaints with acceptable evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211-12 (11th Cir. 2005) (although fibromyalgia lacks objective signs, substantial evidence supported the ALJ's findings that the daily activities of a plaintiff who suffered from fibromyalgia were inconsistent with her pain testimony).  To that end, SSR 12-2p instructs that subjective complaints are the "essential diagnostic tool" for fibromyalgia and that physical examination will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions.  SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  Additionally, when making an RFC determination, SSR 12-2p states, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" *Id*. at *6.  Here, Plaintiff does not challenge the ALJ's consideration of her fibromyalgia and does not challenge the ALJ's consideration of her complaints of pain or her RFC.

Different providers at the UMHC clinic also treated Plaintiff every three months in 2019 for her type 2 diabetes and "Class 2 obesity due to excess calories without comorbidity in adult." (R. 1482) This was followed in March 2020, with a one-paragraph letter from Dr. Carbone stating that Plaintiff "was well known to out rheumatology clinic at the University of Miami. Frequently due to her flares of pain[,] patient is unable to do simple activities or work related duties. We suggested to have a physical capacity evaluation for her disability claims, which is not congruent with Dr. Todorov's evaluation." (R. 1506)

The ALJ reviewed these records and found Dr. Carbone's March 2020 opinion unpersuasive. (R. 19) According to the ALJ, Dr. Carbone's decision is inconsistent with other medical evidence, and "Dr. Carbone cited no evidence in support of his opinion." (*Id.*) Substantial evidence supports this. Dr. Carbone's and UMHC's treatment records show relatively normal findings and document Plaintiff's improvement with treatment. Despite that Dr. Carbone opined that Plaintiff cannot perform simple activities, Plaintiff's treatment consisted of medication management (Plaintiff was taking Metformin and Cymbalta to control her diabetes) and encouragement to exercise. Dr. Carbone suggested a "physical capacity of evaluation" (R. 1506) but did not actually perform one or refer Plaintiff to another provider for one.

Additionally, consultative examiner Eshan Kibria, D.O. examined Plaintiff in May 2018, and noted Plaintiff's diagnosis of diabetes, fibromyalgia, cholesterolemia, hypertension, positive ANA testing, anemia, and chronic pain. Although Plaintiff had decreased range of motion in her lumber spine, Dr. Kibria observed that Plaintiff had full strength in her upper and lower extremities, full grip strength, and a normal gait. (R. 973) And non-examining medical expert Dr. Todorov (whom Dr. Carbone references in his letter), reviewed Plaintiff's

medical records as of September 2019, and completed a physical RFC evaluation. (R. 1083-88) Dr. Todorov opined that Plaintiff can lift up to 10 pounds frequently, sit for up to seven hours per day, and walk for up three hours per day. (R. 1083-88) He answered interrogatories about Plaintiff's impairments, stating her fibromyalgia appeared mild and her tests for connective tissue disease were inconclusive. (R. 1093) Considering these records, substantial evidence supports the ALJ's evaluation of Dr. Carbone's March 2020 opinion for supportability and consistency, in accordance with applicable regulations.

Next is Plaintiff's challenge to the ALJ's consideration of Dr. Perdomo's opinion. Dr. Perdomo is a primary care doctor who treated Plaintiff once during the relevant time, on December 9, 2019. (R. 1354) The physician noted Plaintiff's complaints of widespread muscle pain and tenderness related to her fibromyalgia, with pain at 5 out of 10 on the pain scale. Plaintiff was taking Metformin and Cymbalta to control her diabetes and Flexeril "to control the episodes of fibromyalgia." (*Id.*) She exhibited 3 out of 5 strength in her upper extremities and 4 out of 5 strength in her lower extremities. Dr. Perdomo ordered blood work and advised Plaintiff to eat healthier. (*Id.*)

That same day, Dr. Perdomo completed a physical RFC form at Plaintiff's request. (R. 1357-58) He opined that Plaintiff can stand and walk for one hour at a time for a total of two hours during an eight hour workday and can sit for one hour at a time for up to three hours total. She can lift no amount of weight, and she cannot bend, squat, or climb but can occasionally crawl. (*Id.*) The ALJ found Dr. Perdomo's RFC evaluation unpersuasive, because "[t]he opinion cites no supporting evidence, and it is inconsistent with the claimant's normal physical examinations throughout the relevant period, as well as her normal diagnostic testing." (R. 24) Again, substantial evidence supports this.

Although Plaintiff characterizes Dr. Todorov's interrogatory responses and physical RFC evaluation as the only outlier (Doc. 25 at 23), other treating providers, including Plaintiff's cardiologist and hematologist, indicated she had no muscle or joint tenderness and normal range of motion in her extremities, normal strength, and a normal gait. (R. 936, 951, 955-56, 1042, 1045) On January 16, 2019, hematologist Rami Komrokji, M.D. noted Plaintiff had "no back pain, no neck pain, no joint pain, no muscle pain" and was "fully ambulatory and able to carry out light work." (R. 1084)  She had normal range of motion and normal strength. (R. 1112)  An echocardiogram performed on April 25, 2018, was within normal range and showed no changes from a previous test performed in 2013. (R. 1227-28)  In July 2018, her bone marrow testing was normal. (R. 1040)  And her diabetes was "well controlled on medication" in April 2019. (R. 1251)  These records contradict Dr. Perdomo's very restrictive RFC.  Plaintiff's first argument fails.

### 2. *ALJ's finding regarding the reason Plaintiff stopped working*

In a short argument citing no legal authority (Doc. 25 at 43), Plaintiff argues that the ALJ committed remandable error when he stated "[t]he record indicates the claimant left work to care for her son, who is disabled, which is inconsistent with the causal connection alleged between the claimant's impairments and her present purported inability to work." (R. 23)  In response, the Commissioner emphasizes that the ALJ properly considered Plaintiff's reported daily activities, including her care for her son, in deciding Plaintiff can perform a reduced range of light work.  I agree with the Commissioner; irrespective of how the parties frame the argument, the ALJ properly considered Plaintiff's care for her son.

Under the regulations, the ALJ is tasked with considering all evidence in the case record, including evidence of Plaintiff's daily activities, and assessing Plaintiff's condition as

13

a whole. *See* 20 C.F.R. §§ 404.1520, 404.1520c, 404.1529, 404.1545, 416.921, 416.920c, 416.929, 416.945. In May 2018, Plaintiff told nurse practitioner Sarah Lindsey, ARNP, that she was the primary caregiver for her son. (R. 950) In April 2018, Plaintiff told Dr. Ediriweera that she "lives at home with her disabled son for whom she primary caretakes." (R. 922) The ALJ, in accordance with the regulations, considered this activity in assessing Plaintiff's RFC. At bottom, substantial record evidence supports the finding that Plaintiff continued as her son's primary caregiver despite her allegedly disabling impairments. At this point, I reiterate that, when reviewing an ALJ's decision, my job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

*D. Conclusion*

For the reasons stated above, the ALJ's decision is supported by substantial evidence. It is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on April 29, 2022.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE